UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN L. BRYAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | |
| ALLIED PILOTS ASSOCIATION and AMERICAN AIRLINES, INC., | | Civil Action No. 17-cv-12460-DJC |
| Defendants. | | |

## MEMORANDUM AND ORDER

**CASPER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**December 19, 2018**

**I.    Introduction**

Plaintiff John L. Bryan ("Bryan") brings this action under the Railway Labor Act ("RLA"). D. 1. Bryan alleges that Defendant Allied Pilots Association ("APA") breached its duty of fair representation (Count I) and also asserts a claim for breach of the collective bargaining agreement/wrongful termination (Count II) against Defendant American Airlines ("American"). Id. APA and American have moved to dismiss Bryan's claims. D. 17; D. 20. For the reasons stated below, the Court DENIES APA's motion, D. 17, and ALLOWS American's motion, D. 20.

**II.    Standard of Review**

Pursuant to Rule 12(b)(6), a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the illegal conduct alleged. Id. at 556. The Court "must assume the truth of

1

all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). First, the Court must "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Second, the Court must determine whether the factual allegations support a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). If the facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original).

When reviewing a motion pursuant to Rule 12(b)(6), the Court "may properly consider only facts or documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); see Fed. R. Civ. P. 12(d). The Court may also consider "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

### III. Factual Allegations

Except as otherwise stated, the following facts are based upon the allegations in Bryan's complaint, including the documents attached to and fairly incorporated therein, and are accepted as true for the consideration of the motions to dismiss.

2

Bryan became a pilot for Mohawk Airlines, Inc. ("Mohawk Airlines") in 1969. D. 1 ¶ 6. Subsequently, Mohawk Airlines merged with Allegheny Airlines, Inc., which later became US Airways, Inc. ("US Airways"). Id. Between December 1996 and 1998, Bryan served as Chairman and Chief Executive Officer of US Airways' Air Line Pilots Association's ("ALPA")[1] Master Executive Council. Id. ¶ 7. Consistent with his predecessors, Bryan stopped piloting commercial aircrafts during his two-year term as Chairman and CEO of ALPA's Master Executive Council. Id. ¶¶ 8, 12. As a result of his decision not to fly commercial aircrafts for two years, Bryan was required to complete a retraining program before he could resume piloting. Id. ¶¶ 9-10, 12. Bryan alleges he was entitled to participate in such a program pursuant to the terms of the operating collective bargaining agreement (the "CBA") between ALPA and US Airways at the time.[2] Id. ¶ 13; see 31-2 at 5 (explaining that "[t]raining which is 'reoccurring' in nature shall be open to all pilots for bidding").

In July 1998, Bryan enrolled in a Boeing 767 recurrent retraining program. Id. ¶ 12. According to the complaint, US Airways' President Rakesh Gangwahl, who allegedly had a hostile relationship with Bryan and who had announced earlier that year that he would no longer speak to

---

[1] Prior to 2008, ALPA served as the union for US Airways' pilots. See D. 1 ¶ 7. In April 2008, US Air Line Pilots Association ("USAPA") replaced ALPA as the lawful representatives of US Airways' pilots. Id. ¶ 1, n.1; D. 18 at 3 (explaining that Bryan's complaint incorrectly identified the US Airline Pilots Association as the US Airways Pilots Association). On September 16, 2014, after US Airways merged with American, the American Pilots Association ("APA") replaced USAPA per an announcement by the National Mediation Board, which "certified APA as the representative for all American pilots." Id. The APA has inherited the rights, responsibilities and obligations of predecessor unions, including ALPA and USAPA. Id.

[2] The CBA at issue in this litigation was not attached to Bryan's complaint. Instead, Bryan provided an excerpt from a document entitled "US Airways Pilots Contingent Agreement 1998-2003," D. 31-2, as an attachment to a signed affidavit, D. 31-1, filed in opposition to Defendants' motions to dismiss. According to Bryan's signed affidavit, the aforementioned excerpt is a "true and accurate copy of Section 11 of the Collective Bargaining Agreement agreed upon between the ALPA and US Airways in effect" as of July 1998. D. 31-1 ¶ 3. Although not attached to the complaint, the CBA is referenced therein, see, e.g., D. 1 ¶ 13, and the Court will consider it. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

Bryan, ordered Bryan's removal from the retraining program. Id. ¶¶ 14-15. Bryan alleges this conduct interfered with his right to participate in the training program in violation of the terms of the CBA. See id. ¶¶ 12-17. Because Bryan did not complete the required program, he was deemed unqualified to serve as a US Airways pilot. Id. ¶ 16. US Airways, therefore, terminated Bryan upon completion of his term as Chairman and CEO of the ALPA Master Executive Council in February 1999. Id. Bryan's termination occurred over a year prior to his anticipated retirement date of May 1, 2000 pursuant to US Airways' Early Retirement Incentive Program. Id. Bryan alleges that, due to his wrongful exclusion from the training program and his early termination, he was denied compensation and anticipated retirement benefits totaling over $1 million. Id. ¶ 17.

On February 24, 1999, Bryan filed a grievance ("Grievance No. PHL 99-02-11") regarding the alleged interference with his participation in the training program and his subsequent termination in alleged violation of the CBA. Id. ¶ 18. US Airways denied Bryan's grievance on October 12, 1999 and August 2, 2000. Id. ¶ 19. However, because ALPA had determined that Bryan's grievance was meritorious, id. ¶ 20, it submitted the grievance to US Airways' Pilots System Board of Adjustment ("Adjustment Board") for arbitration on August 29, 2000. Id. The president of ALPA at the time requested the grievance "be heard by the Board at its next regular or special session." Id. This request was purportedly sent to thirteen APA and US Airways officials. Id. Bryan's grievance, however, was never scheduled for arbitration. Id. ¶ 22.

Bryan contacted ALPA (and, eventually, its successors, USAPA and APA) to determine the status of his grievance "on multiple occasions" between August 29, 2000 and the institution of this action in December 2017. See id. ¶ 23. At various, unspecified points over the course of seventeen years, the ALPA and its successors informed Bryan that his grievance was not a priority and that he should anticipate continued delay in obtaining an arbitration date due, in part, to US Airways' two bankruptcies and the company's merger with American. Id. ¶ 24.

4

On February 24, 2017, Bryan contacted Tricia Kennedy ("Kennedy"), the Director of Grievances and Dispute Resolution for APA, the collective bargaining representative for all airline pilots employed by American following its merger with US Airways. Id. ¶ 25. Kennedy explained that she would follow up with Bryan after she researched the status of his grievance. Id. A few months later, on April 13, 2017, Bryan called Kennedy a second time. Id. ¶ 26. Kennedy confirmed that Bryan's grievance was "open." Id. Kennedy asked Bryan how much money he was requesting in connection with the grievance and stated that she would call Bryan back. Id.

In May 2017, Kennedy confirmed that Bryan's grievance would be discussed at a joint American-APA meeting in June 2017. Id. ¶ 27. Kennedy also asked Bryan to provide his settlement request and promised to call him after the joint meeting. Id. Kennedy did not call Bryan back and did not respond to Bryan's emails. Id. ¶ 28. On October 5, 2017, Bryan called Kennedy, who confirmed that APA and American had considered Bryan's grievance during the June 2017 meeting. Id. ¶ 29. Kennedy explained that, as part of a "global settlement" with American, APA "dropped" Bryan's grievance.[3] Id. Kennedy provided no explanation for why Bryan's grievance was withdrawn. Id. At Bryan's request, Kennedy promised to provide the complete grievance file. Id. At the time this action was instituted, Bryan had not yet received the file. Id.

---

[3] Although Bryan did not file the global settlement agreement as an exhibit to his complaint, the Court will still consider the agreement, which APA provided at D. 19-1, in evaluating the motions to dismiss, because it is "integral" to the complaint. See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (noting that "[i]t is well-established that in reviewing the complaint, [the court] may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint") (internal quotation marks and citations omitted).

**IV.     Procedural History**

On December 14, 2017, Bryan filed this lawsuit. D. 1. Defendants American and APA have now moved to dismiss the complaint. D. 17; D. 20. The Court heard the parties on the pending motions and took the matters under advisement. D. 37.

**V.      Discussion**

   **A.     Bryan Has Stated a Claim Against APA for Breach of the Duty of Fair Representation**

   *1.     Bryan's Claim Against APA is Not Time Barred*

APA first argues that Bryan's duty of fair representation claim is time barred. Affirmative defenses, such as a statute of limitations defense, may be raised in a motion to dismiss an action for failure to state a claim. See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998). However, Rule 12(b)(6) requires that "the grounds for dismissal must be clear on the face of the pleadings alone." Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989). Moreover, "review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must 'leave no doubt' that the plaintiff's action is barred by the asserted defense." Blackstone Realty LLC v. Fed. Deposit Ins. Corp., 244 F.3d 193, 197 (1st Cir. 2001) (quoting LaChapelle, 142 F.3d at 508).

Bryan and APA agree that the relevant statute of limitations for an action alleging "breach of [a] collective bargaining agreement and a breach of a duty of fair representation claim under the [RLA] . . . is six months." D. 31 at 5; D. 21 at 5; see Benoni v. Bos. and Me. Corp., 828 F.2d 52, 56 (1st Cir. 1987) (internal quotation marks and citations omitted) (noting that "[a]lthough the RLA has no statute of limitations of its own, the courts . . . have borrowed the six-month limitations period of section 10(b) of the National Labor Relations Act . . . and applied it to actions claiming unfair labor practices under the "RLA"). A cause of action against a union for breach of the duty

of fair representation arises "when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." Graham v. Bay State Gas Co., 779 F.2d 93, 94 (1st Cir. 1985). APA alleges that Bryan's claim against the union "clearly accrued . . . long before June 2017," which is six months before Bryan initiated the instant dispute. D. 21 at 9. For support, APA relies primarily on Metz v. Tootsie Roll Indus., Inc., 715 F.2d 299 (7th Cir. 1983) and Yordán v. Am. Postal Workers Union, AFL-CIO, 293 F.R.D. 91 (D.P.R. 2013). These cases are readily distinguishable.

In Metz, the Seventh Circuit determined that "the failure and refusal of the Union to file the grievance within the specified time [under the collective bargaining agreement] amounted to a final decision" that gave rise to a cause of action triggering the statute of limitations. Metz, 715 F.2d at 303. By contrast, there is no indication here that APA's failure to obtain an arbitration hearing date served as a final decision for determining when the statute of limitations accrued. To the contrary at least as alleged, over the course of seventeen years, union representatives led Bryan to believe that his grievance was still active and that he would eventually receive an arbitration date. D. 1 ¶ 24, 36. As late as February, April and May 2017, a union representative assured Bryan that his grievance was still open and would be discussed by American and APA in June 2017. Id. ¶¶ 25-27. It was not until October 2017, less than six months before this lawsuit, that the union notified Bryan that his grievance was dropped as part of the global settlement between APA and American. Id. ¶ 29. Approximately two months later, in December 2017, Bryan instituted this action. See id. In view of the reasoning in Metz, the Court finds that Bryan filed his complaint within six months of receiving a final decision with respect to his grievance.

In Yordán, the court emphasized that "over two years elapsed" between the plaintiff's last communication with the union and the institution of the lawsuit, and that "[t]his extensive period of inaction should have indicated to [the plaintiff in Yordán] that the Union may have breached its

7

duty of fair representation . . . ." Yordán, 293 F.R.D. at 98. The Court cannot, at this time from the pleadings (and materials reasonably incorporated in pleadings) alone, determine that there was an extensive lapse in communication between Bryan and the union such that Bryan should have known the union had abandoned his grievance. Instead, Bryan alleges that "on multiple occasions and over many years" he attempted to determine the status of his grievance. D. 1 at ¶ 23. Given that the Court "indulge[s] all reasonable inferences that fit the plaintiff's theory of liability" at this stage in the litigation, Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999), it is plausible that Bryan maintained reasonably consistent contact with the union prior to the formal denial of his grievance. Neither Metz nor Yordán require the Court to conclude that, at this juncture, Bryan's claim against APA is time-barred.

2. *Bryan Has Plausibly Alleged APA Acted Arbitrarily or in Bad Faith*

Alternatively, APA argues that Bryan has failed to state a claim that APA breached the duty of fair representation it owed him. D. 20 at 1. A union has a statutory duty to represent its members fairly in collective bargaining and in the enforcement of any collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 177 (1967). "A union breaches this duty 'only when [its] conduct . . . is arbitrary, discriminatory, or in bad faith.'" Miller v. U.S. Postal Serv., 985 F.2d 9, 11 (1st Cir. 1993) (alteration in original) (quoting Vaca, 386 U.S. at 190). A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Newbanks v. Cent. Gulf Lines, Inc., 64 F. Supp. 2d 1, 4 (D. Mass. 1999) (internal quotation marks and citations omitted). But "mere negligence or erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12.

8

Bryan contends that over a span of years, APA (and its predecessors, ALPA and USAPA)[4] engaged in a pattern of conduct that amounts to a breach of its duty of fair representation. Specifically, Bryan alleges that APA (1) failed to obtain an arbitration hearing date for his grievance; (2) misled Bryan into believing that APA was fairly representing him in the handling of his grievance; (3) breached its duty of fair representation in withdrawing his grievance as part of the settlement between APA and American; and (4) failed to timely notify Bryan that his grievance was withdrawn. D. 1 ¶ 36. Bryan contends that APA's handling of his meritorious grievance was "arbitrary, capricious, and in bad faith, with the intent to harm and discriminate" against him. Id. ¶ 35.

Bryan need only plausibly allege that APA acted either arbitrarily, discriminatorily or in bad faith to state a claim for breach of the duty of fair representation. Vaca, 386 U.S. at 190. He has plausibly alleged that the APA acted in bad faith and/or arbitrarily, even if he has not plausibly alleged that the APA discriminated against him. See Newbanks, 64 F. Supp. 2d at 5 (requiring discrimination on the basis of protected status or unfair classification).

A "'union acts in bad faith when it acts with an improper intent, purpose, or motive,' and '[b]ad faith encompasses fraud, dishonesty, and other intentionally misleading conduct.'" Good Samaritan Med. Ctr. v. Nat'l Labor Relations Bd., 858 F.3d 617, 630 (1st Cir. 2017) (alteration in original) (quoting Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998)). Bryan alleges that union representatives led him to believe his meritorious grievance remained open and that an arbitration date was pending, despite continued delays. D. 1 ¶¶ 22-24. Between February and June 2017, Bryan was repeatedly promised an update on his grievance, only to learn in October

---

[4] Given that APA has inherited the rights, responsibilities and obligations of predecessor unions, including ALPA and USAPA, D. 18 at 3, the Court, hereinafter, refers to APA when discussing the alleged conduct of APA and its predecessors. Id.

2017 that APA had withdrawn the grievance in accordance with a global settlement agreement and without providing any notice to Bryan. D. 1 ¶¶ 22-29. In view of these allegations, the Court could reasonably infer that APA acted with bad faith.

In evaluating whether a union acted arbitrarily, courts consider whether "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Miller, 985 F.2d at 12 (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)) (internal quotation marks omitted). The "standard requires the court to examine objectively the competence of the union's representation." Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 420 (1st Cir. 2005). The Court, however, "may not substitute [its] own views for those of the union." Miller, 985 F.2d at 12. Instead, the union must be given "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." Id. Bryan alleges that APA arbitrarily abandoned his meritorious grievance after seventeen years "without explanation," "without involving [Bryan] in the decision to withdraw the grievance" and after "[making] false promises that [union representatives] would get back to [Bryan]" to discuss his grievance. D. 31 at 3. As an initial matter, Bryan alleges that in August 2000 APA "found merit" in Bryan's grievance and, as a result, submitted the grievance to the Adjustment Board for arbitration. D. 1 ¶ 20. In so doing, the union president submitted a request that Bryan's grievance be heard at the "next regular or special session." Id. However, despite the fact that the union president's request was sent to thirteen APA and US Airways officials, the union failed to obtain a date for Bryan's arbitration. Id. ¶¶ 20, 22. Moreover, at no point over the years and in multiple conversations with Bryan did the union schedule arbitration or notify Bryan that it had decided not to pursue his meritorious grievance. Id. ¶ 23. To the contrary, union representatives informed Bryan that there would be a continued "delay" in obtaining an arbitration date due to US Airways' bankruptcies and the merger

10

with American. Id. ¶ 24. Shortly after the Director of Grievances and Dispute Resolution for US Airways apologized to Bryan for "dropping the ball," the union entered a global settlement agreement with American to withdraw Bryan's grievance. Id. ¶¶ 26, 29. Not only did the union allegedly neglect to provide Bryan with notice of its decision to withdraw his meritorious grievance, but it also failed to provide an explanation as to why it decided not to pursue arbitration after nearly seventeen years of asserting that it would do so. Id. ¶ 26.

Although a union member has no "absolute right to have his grievance taken to arbitration," Vaca, 386 U.S. at 191, Bryan has plausibly alleged that the union's alleged "continuing failure to take any action" on Bryan's meritorious grievance over the years without justification was arbitrary. Soto Segarra v. Sea-Land Serv., Inc., 581 F.2d 291, 295-96 (1st Cir. 1978) (affirming that the union breached its duty of fair representation where the plaintiff's "six-month letter writing campaign" provided the union with adequate opportunities to proceed with the grievance process and the union's "continuing inaction" confirmed that "the union would be less than vigorous in his defense"); see Sanchez v. New England Confectionery Co., Inc., 120 F. Supp. 3d 33, 37-38 (D. Mass. 2015) (distinguishing cases concerning mere negligence from cases in which unions made "no effort to advocate for their members"). Further, APA's assertion that its "actions . . . were entirely consistent with its exclusive authority 'to resolve institutional and individual grievances,'" D. 21 at 16, are inapposite where, as here, it either arbitrarily ignored or perfunctorily processed a meritorious grievance. See Melanson v. John J. Duane Co. Inc., 507 F. Supp. 238, 241 (D. Mass. 1980) (explaining that "a union behaves arbitrarily toward an aggrieved union member if it ignores a meritorious grievance for no apparent reason or processes it with only perfunctory attention"). Moreover, when unions fail to provide adequate notice of or justification for a decision to withdraw an employee's grievance, courts have found that the union acted arbitrarily in violation of the duty of fair representation. See Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1091 (9th Cir.

11

1978) (explaining that "[a]cts of omission by union officials . . . may be so egregious . . . as to be arbitrary" and vacating summary judgment because union "fail[ed] to disclose to appellant that her grievance would not be submitted to arbitration"). The Court concludes, at a minimum, that Bryan has plausibly alleged the union acted arbitrarily or in bad faith with respect to its duty to fairly represent Bryan in processing his grievance.

### B. Bryan Has Failed to State a Claim Against American for Breach of the Collective Bargaining Agreement

Bryan also alleges that American breached the terms of the CBA in effect when he was terminated. See D. 1 ¶¶ 18, 38-45 (explaining that American's predecessor, US Airways, wrongfully prohibited Bryan from participating in a pilot retraining program in violation of the CBA, which resulted in Bryan's early termination). Under the RLA, which governs Bryan's claims against the union and American, "minor disputes between an employee and [an employer] concerning the terms of [a] collective bargaining agreement are within the exclusive jurisdiction" of the appropriate adjustment board. Raus v. Bhd. Ry. Carmen, 663 F.2d 791, 794 (8th Cir. 1981) (citing Andrews v. Louisville and Nashville R.R., 406 U.S. 320, 322 (1972)); see 45 U.S.C. § 184 (creating adjustment board for carriers by air and explaining that disputes between employees and carriers "may be referred by petition of the parties . . . to an appropriate adjustment board"); 45 U.S.C. § 153 *et seq.* (describing the powers and duties of the National Railroad Adjustment Board, including its jurisdiction over "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions"). Federal district courts, therefore, "do not have general subject matter jurisdiction to adjudicate disputes [between employers and employees] arising from a breach of a collective bargaining agreement governed by the RLA." Bove v. Long Island R.R., No. 93 CV 4032, 1995 WL 901990, at *3 (E.D.N.Y. Dec. 12, 1995).

Nevertheless, in the absence of arbitration before an adjustment board, courts have exercised jurisdiction over collective bargaining claims against employers under the RLA where such claims (1) were joined with an action against a union for breach of the duty of fair representation, and (2) "there [were] well-plead allegations of something like collusion between the [employer] and the union in denying the employee their rights under the [CBA] and the [RLA]." Raus, 663 F.2d at 798; see Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 331 (1969) (exercising jurisdiction over claims against an employer under the RLA, despite the parties' failure to exhaust administrative remedies, where the union had acted in "concert" with the employer to "set up schemes and contrivances" to prevent employees from exercising rights under the CBA at issue); Emswiler v. CSX Transp., Inc., 691 F.3d 782, 790 (6th Cir. 2012) (explaining that allegations of "collusion between the union and employer" would allow courts to grant relief against an employer under the RLA despite failure to arbitrate); Richins v. S. Pac. Co., 620 F.2d 761, 762 (10th Cir. 1980) (considering collective bargaining claims against an employer under the RLA and claims against the union for breach of the duty of fair representation where "the alleged facts . . . are consistent with a pattern of collusion between Union and [employer]").

In Raus, for example, the Seventh Circuit held there was no subject matter jurisdiction over a claim against an employer where there were "neither allegations nor facts supporting allegations of collusion between the railroad and the union in denying the [employee's] access to [an] apprentice program in violation of the [CBA]." Raus, 663 F.2d at 798-99. There, the court allowed the employee's action against the union for breach of the duty of fair representation to proceed. Id. at 799. The First Circuit has similarly focused on whether the union and employer were "together involved in the creation of the employee's basic grievance" in determining whether subject matter jurisdiction existed over a claim against an employer for allegedly breaching the terms of a CBA. Stanton v. Delta Airlines, Inc., 669 F.2d 833, 837 (1st Cir. 1982) (citing Raus for

13

support). In Stanton, the First Circuit affirmed the district court's refusal to exercise jurisdiction over a collective bargaining claim against an employer where the grievance had not been arbitrated on the merits and the union at issue was "not itself involved in the pressure or the misrepresentation" that formed the basis of the plaintiff's grievance against his employer. Id.

Bryan alleges that "American acted jointly with APA in failing to obtain a hearing date for [Bryan's] grievance," D. 1 ¶ 39, and "American acted jointly with APA in deceiving [Bryan] into believing they were working on settling his grievance and/or intended to schedule a date for his grievance to be arbitrated," id. ¶ 40. However, conclusory allegations alone are insufficient to raise a plausible inference of collusion between employer and union. See Addington v. U.S. Airline Pilots Ass'n, 588 F. Supp. 2d 1051, 1063 (D. Ariz. 2008), rev'd on other grounds, 606 F.3d 1174 (9th Cir. 2010) (declining to exercise subject matter jurisdiction over breach of contract claims against US Airways where pilots failed to "allege[] nor present[] any specific facts suggesting collusion" and noting that "conclusory allegations . . . are insufficient to establish collusion"). Bryan has not alleged specific facts suggesting that American and APA acted in concert at any point. The allegations in the complaint do not raise a plausible inference that American and APA's predecessors colluded to deny Bryan access to the pilot retraining program in alleged violation of the terms of the operating CBA. Nor does Bryan plausibly allege that American was involved in APA's failure to schedule an arbitration date or even the decision to withdraw Bryan's grievance with prejudice pursuant to a global settlement agreement that resolved thousands of pending grievances. Even if the "union's goals or means were improper," courts may not exercise subject matter jurisdiction over minor disputes against an employer subject to the RLA where "the record does not show that the airline pursued or shared those goals or means." Addington, 588 F. Supp. 2d at 1063. Reading the complaint in a light most favorable to Bryan, the Court concludes there are "neither allegations nor facts supporting allegations of collusion

14

between [American] and the union in denying [Bryan's] access to the [training] program" in purported violation of the CBA. Raus, 663 F.2d at 798-99; see Stanton, 669 F.2d at 837.

The cases Bryan cites for support do not compel the Court to exercise subject matter jurisdiction over his claim against American given that the disputes at issue in those cases were governed by the Labor Management Relations Act ("LMRA") and not the RLA. See DelCostello v. Int'l Board of Teamsters, 462 U.S. 151, 157 (1983); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 561 (1976); Vaca, 386 U.S. at 173. As a general matter, disputes involving employers covered by the RLA, including common carriers by air like American, are expressly exempt from the LMRA. See Raus, 663 F.2d at 794 (explaining that the LMRA "expressly exempt[s] . . . employers and employees subject to the [RLA]"); Corbin v. Pan Am. World Airways, Inc., 432 F. Supp. 939, 942 (N.D. Cal. 1977) (explaining that "[f]ederal courts do not have jurisdiction over actions brought pursuant to the LMRA . . . where the parties involved are [employers] and employees governed by the [RLA]"); Bruno v. Ne. Airlines, 229 F. Supp. 716, 718 (D. Mass. 1964) (dismissing complaint for lack of jurisdiction where plaintiff erroneously brought a claim against an airline pursuant to the LMRA as opposed to the RLA).

Even if subject matter jurisdiction is appropriate based upon the allegations at issue here, Bryan cannot state a claim against American given that his grievance was withdrawn pursuant to a legally binding settlement agreement between APA and American. D. 35 at 2. Bryan does not dispute that APA, as the "duly recognized and authorized exclusive collective bargaining representative under the RLA for all airline pilots employed by American," has the authority to "negotiate, conclude agreements, and settle grievance disputes." D. 1 ¶ 5. Bryan, nevertheless, contends that the global settlement agreement should not be considered binding because it is "tainted" by APA's breach of the duty of fair representation. D. 30 at 2-3. As American points out, "[i]mposing liability on an [employer] where it bargained an agreement in good faith and only

the union acted improperly 'would require an employer to supervise the actions of the union [] and make an independent evaluation of the conduct and decisions of the union'" prior to entering otherwise binding agreements. D. 35 at 4 (quoting In Re AMR Corp., 567 B.R. 247, 260 (Bankr. S.D.N.Y. 2017)). Although, as discussed above, Bryan has stated a claim against APA for breach of the duty of fair representation, Bryan has not alleged that American acted in bad faith in entering the global settlement agreement. See Am. Airlines Flow-Thru Pilots Coal. v. Allied Pilots Ass'n, No. 15-cv-03125-RS, 2015 WL 9204282, at *3 (N.D. Cal. Dec. 17, 2015) (finding that "merely agreeing to a union's contractual demands, even with knowledge that the union may not be advocating for all its members fairly, is not a sufficient basis for imposing liability on an employer"). The duty of fair representation is ultimately the union's duty and, as such, "something more than merely acceding to union demands must be alleged," id., for the Court to hold American responsible for the union's breach and unravel an otherwise binding agreement between parties with the authority to enter the same. Without more, Bryan has failed to state a claim against American for breach of the CBA.

**VI.     Conclusion**

For the foregoing reasons, the Court DENIES APA's motion to dismiss, D. 20, and ALLOWS American's motion to dismiss, D. 17.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge