**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| ) | |
| **JON L. BRYAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 17-cv-12460-DJC** |
| ) | |
| **ALLIED PILOTS ASSOCIATION and** ) | |
| **AMERICAN AIRLINES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| _____) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    **June 15, 2020**

## I.     Introduction

Plaintiff Jon L. Bryan ("Bryan") brings this action under the Railway Labor Act ("RLA"). D. 1.  Bryan alleged that Defendant Allied Pilots Association ("APA") breached its duty of fair representation (Count I) and Defendant American Airlines breached the terms of the collective bargaining agreement in effect prior to Bryan's termination (Count II).  Id.  This Court previously dismissed the claim against American Airlines.  D. 40.  APA now moves for summary judgment on the remaining count.  For the reasons stated below, the Court ALLOWS APA's motion, D. 60.

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp.,

1

217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

The movant "bears the burden of demonstrating the absence of a genuine issue of material fact."

Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations

or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must,

with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a

trier of fact could reasonably resolve that issue in her favor," Borges v. Serrano-Isern, 605 F.3d 1,

5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly]

probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). "Neither party may

rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived

from the pleadings, depositions, answers to interrogatories, admissions and affidavits to

demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d

1, 3 (1st Cir. 1997). In conducting this inquiry, the Court "view[s] the record in the light most

favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc.,

556 F.3d 20, 25 (1st Cir. 2009).

### III.    Factual Background

The following facts are drawn from APA's statement of material facts, D. 61, Bryan's

response to same, D. 66, and other supporting documents and are undisputed unless otherwise

noted.[1]

---

[1] At oral argument, counsel for Bryan argued that the newly stated facts in his response to APA's statement of material facts must be admitted as true because APA did not respond to it. Local Rule 56.1, upon which Bryan relies, however, states that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Here, APA is the moving party, and thus a response was required to APA's statement of material facts by Bryan, the opposing party. Moreover, it is up to the discretion

### A.      Bryan's Grievance with US Airways

Bryan was a captain with US Airways until he retired in 1999.  D. 66 Resp.[2] ¶ 14.  Until 2008, the Air Line Pilots Association ("ALPA") was the duly certified collective bargaining agent for US Airways pilots.  D. 66 Resp. ¶ 2.  In or around December 1996, Bryan was elected to a two-year term as the chairman of the ALPA Master Executive Council.  D. 66 Resp. ¶ 15.  During his two-year term, Bryan ceased piloting commercial aircraft and did not participate in any recurrent pilot training.  D. 66 Resp. ¶¶ 16, 19.  As a result, Bryan's qualification to fly lapsed in 1997. D. 66 Resp. ¶ 19.

US Airways and ALPA agreed to an Early Retirement Program ("ERIP"), which permitted up to 325 pilots to opt into the program to retire between May 1998 and May 2000.  D. 66 Resp. ¶¶ 21, 22.  Under the ERIP, pilots could designate their preferred retirement date, but US Airways would assign retirement dates based on operational needs and other considerations.  D. 66 Resp. ¶ 23.  Bryan voluntarily opted into the ERIP in or around March 1998.  D. 66 Resp. ¶ 20.  In or around the summer of 1998, Bryan sought to enroll in training to regain qualification to fly.  D. 66 Resp. ¶ 28.  Bryan was scheduled to participate in a training program in August 1998, but his participation was canceled by US Airways.  D. 66 Resp. ¶ 29.  US Airways advised Bryan that his training was canceled because US Airways determined the training was not an appropriate use of company resources.[3]  D. 66 Resp. ¶ 30.  US Airways selected Bryan to retire on January 1, 1999

---

of this court whether facts stated in a statement of material facts are to be admitted as true,  see Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 492 n.1 (D. Mass 2008), which the Court declines to do here.

[2] Citations to "D. 66 Resp." refer to the section of Bryan's statement of material facts responding to APA's statement of material facts, beginning on page twenty-one of D. 66.  Citations to "D. 66" refer to Bryan's statement of material facts beginning on page one of D. 66.

[3] In a letter detailing his grievance, Bryan indicated that he contested US Airways' cancellation of his training as a "misinterpretation and misapplication" of the US Airways Pilots' Working Agreement.  D. 63-1 at 98.  Bryan contends that the cancellation of his training resulted

under the second phase of retirements pursuant to the ERIP.  D. 66 Resp. ¶ 35.  Bryan received all

benefits called for under the ERIP.  D. 66 Resp. ¶ 35.

On February 24, 1999, Bryan filed a grievance under the collective bargaining agreement

between US Airways and ALPA regarding US Airways' cancellation of his training.  D. 66 Resp.

¶ 37.  US Airways denied the grievance at the first step of the grievance process, stating, in part,

that "Bryan was properly assigned a retirement date . . . and was appropriately withheld from

training consistent with the intent of not expending training resources on a pilot scheduled to

retire."  D. 66 Resp. ¶ 38.  US Airways subsequently denied Bryan's grievance at step two of the

process on August 2, 2000.  D. 66 Resp. ¶ 39.  Pursuant to standard practices, the ALPA submitted

Bryan's dispute to the U.S. Airways Pilots System Board of Adjustment for arbitration on August

29, 2000.  D. 66 Resp. ¶ 40.  The issue submitted concerned whether US Airways had acted

improperly by "unilaterally and arbitrarily cancelling [Bryan's] training."  D. 66 Resp. ¶ 41.

**B.**  **The Unions' Handling of Bryan's Grievance**

1.  ALPA and USAPA

Under ALPA, grievances were handled through a Grievance Committee comprised of

pilots.  D. 66 Resp. ¶ 42.  In January 2004, Bryan sent a letter to the National President of ALPA

inquiring about the status of his grievance and requesting that it be scheduled for arbitration.  D. 66

Resp. ¶ 43.  There is no indication that Bryan received a response to his letter and his grievance

was not scheduled for arbitration.  D. 66 Resp. ¶ 44.  Captain Tracy Parrella ("Parrella") was the

Grievance Committee chairman for ALPA from 2003 through 2008.  D. 66 Resp. ¶ 51.  Parrella

made recommendations regarding which grievances were scheduled for arbitration.  D. 66 Resp.

---

from the deterioration of his relationship with US Airways president Rakesh Gangwahl based on
positions that Bryan took in negotiations with US Airways.  D. 66 ¶¶ 63-65.

¶ 54.   In June 2004, Bryan emailed Parrella asking that she process his grievance through arbitration, noting that "the passage of five years for processing was excessive."  D. 66 Resp. ¶ 56. In or about August 2004, Parrella informed Bryan that his "grandchildren would be dead before arbitration [of his grievance] was scheduled."  D. 66 Resp. ¶ 60.  ALPA did not schedule Bryan's grievance for arbitration following this communication.  See D. 66 Resp. ¶ 59.

In December 2005, Bryan emailed Parrella with a settlement proposal and threatened to commence litigation if no settlement was reached.  D. 66 Resp. ¶ 62.  ALPA did not conduct settlement negotiations following the letter and Bryan did not commence litigation.  D. 66 Resp. ¶ 63.  In January 2006, Parrella contacted Bryan and informed him that his grievance would not be scheduled in the "foreseeable future."  D. 66 Resp. ¶ 64.  In October 2007, Bryan sent a letter to the ALPA National President advising him that ALPA had failed to schedule his grievance for arbitration and referencing the possibility of pursuing a duty of fair representation claim against ALPA, indicating that, if no settlement could be reached, he would be "forced" to seek a legal resolution.  D. 66 Resp. ¶¶ 65, 66.  ALPA did not schedule Bryan's grievance for arbitration following this communication and Bryan did not commence legal action against ALPA.  D. 66 Resp. ¶ 67.

In or around 2008, the US Airways Pilots Association ("USAPA") replaced ALPA as the collective bargaining agent for US Airways pilots.  D. 66 Resp. ¶ 45.  Parrella was the Grievance Committee chair for USAPA from 2008 through 2012.  D. 66 Resp. ¶ 52.  During her time as Grievance Committee chair for ALPA and USAPA, Parrella included Bryan's grievance on a list of grievances to be withdrawn by the union.  D. 66 Resp. ¶ 69.  Bryan contacted Parrella in December 2011 to inquire about the status of his grievance, again threatening legal action regarding the failure of the union to pursue his grievance.  D. 66 Resp. ¶¶ 71, 72.  Although his

grievance was not scheduled for arbitration following this communication, Bryan did not initiate any legal action and had no further contact with USAPA concerning the grievance between December 2011 and October 2014.  D. 66 ¶¶ 74, 75.

Captain David Ciabattoni ("Ciabattoni") served as the Grievance Committee chair for USAPA beginning in or around 2013 through in or about 2014.  D. 66 ¶ 84.  During this time, Bryan's grievance was not scheduled for arbitration.  D. 66 Resp. ¶ 86.  Ciabattoni consulted Captain Doug Mowery ("Mowery"), a former ALPA Grievance Committee chairman, as a subject-matter expert regarding Bryan's grievance.  D. 66 Resp. ¶¶ 89, 90.  Ciabattoni later included Bryan's grievance on in internal working list indicating that it was a candidate for withdrawal by the union.  D. 66 Resp. ¶ 92.

2.    APA

In or around December 2013, US Airways merged into American Airlines.  D. 66 Resp. ¶ 7.  At the time of the merger, US Airways pilots were represented by USAPA and American Airlines pilots were represented by APA.  D. 66 Resp. ¶ 8.  In or around September 2014, APA was certified as the collective bargaining agent for the pilots of the merged American Airlines. D. 66 Resp. ¶ 9.  APA set up a process whereby former USAPA subject-matter experts would review grievance files and make recommendations regarding which grievances to pursue.  D. 66 Resp. ¶ 97.  Tricia Kennedy, Esq. ("Kennedy") is the Director of Grievance and Dispute Resolution at APA.  D. 66 Resp. ¶ 160.  Kennedy asked Ciabattoni to travel to APA to assist with reviewing grievance files.  D. 66 Resp. ¶¶ 94, 95.  Ciabattoni met with former USAPA representatives, including former USAPA Negotiating Committee chairman Dean Colello ("Colello") and former USAPA Charlotte domicile representative Ron Nelson ("Nelson") to review the grievance files over a number of days.  D. 66 Resp. ¶¶ 101, 166.  On November 3, 2015, Ciabattoni sent Kennedy

an email containing a chart titled "OLD USAPA WITHDRAWN GRIEVANCES TABLE" that included Bryan's grievance.  D. 66 Resp. ¶¶ 107-109.  Upon reviewing Bryan's grievance file for the APA in November 2015 and conducting research, Ciabattoni, Colello and Nelson agreed that Bryan's grievance should not be pursued by APA.  D. 66 Resp. ¶¶ 168-170.  Ciabattoni made the recommendation to Kennedy that the grievance should be withdrawn.  D. 66 Resp. ¶¶ 111-116. Bryan did not attempt to contact anyone at APA regarding his grievance between 2014 and February 2017.  D. 66 Resp. ¶ 184.  Bryan first reached out to Kennedy at APA regarding the status of his grievance on February 24, 2017.  D. 66 ¶ 123.  Bryan did not hear back from Kennedy regarding the status of his grievance, so called her again on April 13, 2017 and stated that he would litigate if he did not hear back from Kennedy within thirty days.  D. 66 ¶ 126; see D. 67-3 at 2. Kennedy did not get back to Bryan within thirty days and Bryan reached out to Kennedy again in May 2017, at which time she indicated that a meeting was scheduled with American Airlines in which Bryan's grievance would be discussed.  D. 66 ¶ 127.

### C.  The Global Settlement

In or around December 2015, APA met with representatives of American Airlines to discuss a potential global settlement of all outstanding US Airways grievances that the USAPA representatives had recommended that APA pursue.  D. 66 Resp. ¶ 174.  APA insisted that the agreement with American Airlines (the "Global Settlement Agreement") include all meritorious grievances whether the affected pilot was employed by American Airlines at that time.  D. 66 Resp. ¶ 176.  The parties reached a tentative global settlement, which included all grievances that had been previously withdrawn by USAPA or were recommended for withdrawal by the USAPA subject-matter experts.  D. 66 Resp. ¶ 183.  In October 2017, Kennedy notified Bryan of the tentative global settlement and that Bryan's grievance had been withdrawn by APA.  D. 66 Resp.

¶ 186.  Kennedy indicated that the global settlement had not yet been finalized and that Bryan could contact Paul DiOrio ("DiOrio"), the Chairman of the Philadelphia domicile and a former USAPA representative, if Bryan had any questions regarding his grievance.  D. 66 Resp. ¶ 188. Bryan did not contact DiOrio at any time to discuss his grievance.  D. 66 Resp. ¶ 189.  The Global Settlement Agreement, which included the withdrawal of Bryan's grievance, was finalized and executed on October 16, 2017.  D. 66 Resp. ¶ 192.

## IV.    Procedural History

Bryan filed a complaint in this action on December 14, 2017.  D. 1.  The Court denied APA's motion to dismiss and granted American Airlines' motion to dismiss.  D. 40.  APA has now moved for summary judgment.  D. 60.  The Court heard the parties on the motion and took the matter under advisement.  D. 72.

## V.    Discussion

The Railway Labor Act ("RLA") governs labor relations in the airline industry.  Hennebury v. Transport Workers Union, 485 F. Supp. 1319, 1321 (D. Mass. 1980) (citing 45 U.S.C. § 151 et seq.).  Under the RLA, "[a]s 'the exclusive bargaining representative of the employees, a union has a statutory duty fairly to represent all of those employees.'"  Cabral v. Mass. Bay Transp. Auth., No. 18-cv-12404-NMG, 2019 WL 3781567, at *6 (D. Mass. June 18, 2019) (quoting Emmanuel v. Int'l Bd. of Teamsters, Local Union No. 25, 426 F.3d 416, 419-20 (1st Cir. 2005)).

APA argues that Bryan's claim must be dismissed because APA never owed him a duty of fair representation as Bryan was never a member of APA and was not employed by American Airlines.  D. 62 at 9.  APA also argues that Bryan's claim, which is based on the union's handling of a grievance he filed in 1999, is time-barred by the applicable six-month statute of limitations. D. 62 at 10-13.  Finally, APA contends that, even if they owed Bryan a duty of fair representation

and the claim was brought within the statute of limitations, the APA did not breach their duty to Bryan.  D. 62 at 13-21.  The Court addresses each of these arguments in turn.

      A.     **Duty of Fair Representation to Bryan**

Based on this record, the court assumes, *arguendo*, that APA owes a duty of fair representation to Bryan.  Although the parties agree that Bryan was never a member of APA, D. 66 Resp. ¶ 12, the record supports the conclusion that APA assumed a duty to pilots who had outstanding grievances filed with ALPA and USAPA.  Upon certification as the collective bargaining agent for American Airlines pilots following the merger between American Airlines and US Airways, representatives of APA set up a process to review outstanding USAPA grievances with the input of past USAPA representatives.  D. 66 Resp. ¶¶ 94-97.  Ciabattoni, the former USAPA Grievance Committee chairman, who participated in this process, emailed Bryan to inform him that USAPA no longer had rights or duties with respect to Bryan's grievance and that APA "now has those duties and rights to represent you and advocate for you."  D. 66 ¶ 4; D. 67-1 at 2.  This email further indicated that USAPA had requested a filing in the bankruptcy court to ensure the assumption of outstanding USAPA grievances.  D. 67-1 at 2-3.  APA representatives met with American Airlines to negotiate a global settlement of all past US Airways grievances, specifically rejecting American Airlines' proposal that the settlement should include only pilots then working for American Airlines and insisting that it cover all grievances, not just those of current employees.  D. 66 Resp. ¶¶ 174-176.  Further, in the Global Settlement Agreement executed by APA and American Airlines to settle the outstanding USAPA grievances, APA expressly acknowledged that it had "inherited" grievances from USAPA.  D. 66 ¶¶ 8-9; D. 64-3 at 1.

Based on these undisputed facts, this Court assumes that APA assumed the duty to represent Bryan with regard to his grievance initiated with ALPA and, thus, assumed the duty of fair representation on his behalf.  See Cabral 2019 WL 3781567, at *6.  Further, in Barnes v. Air Line Pilots Ass'n, 141 F. Supp. 3d 836 (N.D. Ill. 2015), the court noted that, if a union "through both omission and commission, conveyed to the [grievants] that it was negotiating on their behalf," the union could have assumed a duty of fair representation as to those pilots.  See Barnes, 141 F. Supp. 3d at 844-845.  Here, the APA, through their process of reviewing and negotiating the USAPA outstanding grievances, conveyed to pilots that they were resolving the grievances on their behalf.  The cases cited by APA are distinguishable and do not support their argument as none involved a union that took affirmative actions to engage in negotiations on behalf of those to which they claimed they owed no duty.

### B.   The Statute of Limitations Bars Bryan's Claim

Although assuming APA owes a duty to Bryan, on this developed record, even just focusing on APA, Bryan knew or reasonably should have known of the unions' alleged wrongdoing long before filing suit.  Bryan and APA agree that the relevant statute of limitations for an action alleging a breach of the duty of fair representation claim under the RLA is six months. D. 62 at 11; D. 65 at 10; see Benoni v. Bos. and Me. Corp., 828 F.2d 52, 56 (1st Cir. 1987) (noting that "[a]lthough the RLA has no statute of limitations of its own, the courts . . . have borrowed the six-month limitations period of section 10(b) of the National Labor Relations Act . . . and applied it to actions claiming unfair labor practices under the RLA") (internal quotation marks and citations omitted).  A cause of action against a union for breach of the duty of fair representation arises "when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing."  Graham v. Bay State Gas Co., 779 F.2d 93, 94 (1st Cir. 1985).  "As a general

matter, a duty of fair representation claim accrues and the six-month limitations period commences when 'the futility of further union appeals becomes apparent or should have become apparent.'" Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 305 (3rd Cir. 2004) (quoting Scott v. Local 863, Int'l Brotherhood of Teamsters, etc., 725 F.2d 226, 229 (3d Cir. 1984)). "If, however, a union purports to continue to represent an employee in pursuing relief, the employee's duty of fair representation claim against the union will not accrue so long as the union proffers 'rays of hope' that the union can 'remedy the cause of the employee's dissatisfaction.'" Id. (quoting Childs v. Penn. Fed'n Brotherhood of Maintenance Way Employees, 831 F.2d 429, 434 (3d Cir. 1987)).

APA argues that Bryan's claim against the union accrued prior to June 2017, which is six months before Bryan initiated the instant case in December 2017, D. 1, based on ALPA and USAPA's collective failure to take any action with regards to Bryan's grievance for over fifteen years. D. 1; D. 62 at 12. Bryan counters that the six-month period did not begin to accrue until October 2017, when Kennedy notified him that APA had withdrawn his claim. See D. 65 at 10. The undisputed record indicates that, between 1999, when Bryan first filed his grievance, D. 66 Resp. ¶ 37, and September 2014, when APA was certified as the collective bargaining representative for pilots following the merger of US Airways and American Airlines, D. 66 Resp. ¶ 9, Bryan contacted representatives from ALPA and USAPA numerous times inquiring about the status of his grievance and threatening legal action if the unions failed to act expeditiously to process his grievance. See D. 66 Resp. ¶ 43 (Bryan sent a letter to the National President of ALPA requesting that his grievance be scheduled for arbitration in January 2004); D. 66 Resp. ¶ 56 (in June 2004, Bryan emailed Parrella asking that his grievance be processed and noting that the passage of five years since its filing was "excessive"); D. 66 Resp. ¶ 62 (in December 2005, Bryan emailed Parrella with a settlement proposal and threatened to commence litigation if a settlement

was not reached); D. 66 Resp. ¶ 65 (in October 2007, Bryan sent a letter to the National President of ALPA regarding the failure to schedule his grievance for arbitration); D. 66 Resp. ¶¶ 71-72 (in December 2011, Bryan contacted Parrella threatening legal action for the union's failure to process his grievance).   None of these communications resulted in the unions taking action to schedule Bryan's grievance for arbitration.   In August 2004, Parrella informed Bryan that his "grandchildren would be dead before the arbitration was scheduled."   D. 66 Resp. ¶ 60.   "Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation."   Pantoja v. Holland Motor Express, Inc., 965 F.2d 323, 327 (7th Cir. 1992).   Based on these facts, it is apparent that Bryan was aware that neither ALPA nor USAPA was acting on his grievance and that this inaction could give rise to a duty of fair representation claim.   As such, Bryan's claim accrued prior to APA's certification as collective bargaining agent.

Even considering only the time following APA's certification as collective bargaining agent in 2014, the undisputed facts indicate that Bryan's duty of fair representation claim is time-barred.   On October 2, 2014, Bryan was notified that APA had inherited the outstanding USAPA grievances in an email from Ciabattoni that referenced the new working agreement.   See D. 66 ¶ 4; D. 67-1 at 1.   Bryan did not attempt to contact anyone at APA regarding the status of his grievance between 2014 and February 2017.   D. 66 Resp. ¶ 184.   Bryan first contacted Kennedy about the status of his grievance in February 2017, which is over six months prior to the date when Bryan filed the present action in December 2017.   See D. 66 ¶ 187.   Bryan indicates that Kennedy did not get back to him after he initially called her in February 2017, so he called her again in April 2017 and stated that if he did not receive an adequate response within thirty days he would litigate. See D. 66 ¶ 126; D. 67-3 at 2.   Bryan admits that he did not receive a response within thirty days of his April 2017 call, but he did not initiate litigation at that time.   D. 66 ¶ 127.

Bryan does not dispute that he never received any communication from APA that it was going to take his grievance to arbitration.  D. 66 Resp. ¶ 50.  In Yordán v. Am. Postal Workers Union, AFL-CIO, 293 F.R.D. 91 (D.P.R. 2013), the court noted that "[u]nion inaction should indicate to the plaintiff that the union breached its duty of fair representation" in finding that a plaintiff's claim was barred by the statute of limitations where there was no communication or action by the union regarding plaintiff's grievance for over two years.  Yordán, 293 F.R.D. at 97 (citing Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir. 1983); Delaney v. District of Columbia, 612 F. Supp. 2d 38, 43 (D.D.C. 2009); Pulliam v. United Auto Workers, 354 F. Supp. 2d 868, 872 (W.D. Wisc. 2005)).  The court rejected plaintiff's contention that she was not required to initiate suit until she received formal notice that the union had abandoned her claim, stating that "[the two-year] period of inaction should have indicated to Yordán that the Union may have breached its duty of fair representation, triggering the statute of limitations."  Yordán, 293 F.R.D. at 98.  Here, the approximately three-year period of inaction by APA should have indicated that the union was not acting on Bryan's 1999 grievance.

Bryan relies upon Bensel to support his argument that his claim did not accrue until he was notified that his grievance was withdrawn in October 2017.  D. 65 at 10.  Bensel, however, is distinguishable as the union in that case pursued arbitration and the court noted that a positive outcome in the arbitration would have mooted the duty of fair representation claim.  Bensel, 387 F.3d at 307.  As such, the court stated that "[w]here a union represents the employee in an arbitration proceeding and proffers rays of hope concerning the possibility of success in spite of its breach . . . the employee's cause of action does not accrue until the arbitration board denies the employee's claim."  Id.  The same is not applicable here where APA did not arbitrate Bryan's claim and approximately three years passed without any action or communication by APA.

The record indicates that APA took no action regarding Bryan's claim over a period of years and that Bryan was aware of his right to file a claim on the basis of this inaction, but did not do so.[4]  As the court in <u>Pantoja</u> indicated, "[t]he [grievant] cannot be allowed to sit back and claim lack of notice in circumstances such as these. . . . The alleged violation, which consisted of union inactivity, should have been discovered by a reasonably diligent plaintiff."  <u>Pantoja</u>, 965 F.2d at 327.  As such, Bryan's claim is barred by the six-month statute of limitations.

### C.   <u>APA Did Not Breach Their Duty of Fair Representation</u>

Even if the statute of limitations did not apply to bar Bryan's claim, summary judgment in favor of APA is warranted because APA did not breach its duty of fair representation in processing Bryan's grievance.  "Wrongdoing constituting a breach of duty is defined as arbitrary, discriminatory or bad faith conduct."  <u>Borowiec v. Local No. 1570 of Int'l Brotherhood of Boilermakers, etc.</u>, 626 F. Supp. 296, 301 (D. Mass. 1986) (citing <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967)).  A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."  <u>Newbanks v. Cent. Gulf Lines, Inc.</u>, 64 F. Supp. 2d 1, 4 (D. Mass. 1999) (internal quotation marks and citations omitted).  A union's actions are arbitrary where, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  <u>Miller v. U.S. Postal Serv.</u>, 985 F.2d 9, 12 (1st Cir. 1993) (quoting <u>Air Line Pilots Ass'n Int'l v. O'Neill</u>, 499 U.S. 65, 78 (1991)).  But "mere negligence or erroneous judgment will not constitute a breach of the duty of fair

---

[4] Bryan states that he did not take any action between 2014 and 2017 because the former USAPA grievance chair informed him that the grievance would not be addressed until a new working agreement was executed. D. 65 at 11, n.8.  Bryan cites no authority indicating that the statute of limitations should be tolled for the three-year period based upon same.  It remains undisputed that APA did not indicate that it was processing Bryan's grievance at any time during the three-year period of inaction.  <u>See</u> D. 66 ¶¶ 184-185.

representation." Id. at 12.  Judicial review of union action "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." O'Neill, 499 U.S. at 78.

It is undisputed that APA utilized a process to review the grievances it inherited from USAPA, including Bryan's, whereby it relied upon former USAPA representatives as subject-matter experts to review the grievances and make recommendations as to which grievances APA should pursue and which should be withdrawn.  D. 66 Resp. ¶ 97.  In November 2015, Ciabattoni, a former chair of the Grievance Committee for USAPA, Colello, a former USAPA Negotiating Committee chairman, and Nelson, a former USAPA Charlotte domicile representative, researched, reviewed and discussed Bryan's claim, ultimately recommending to APA that Bryan's claim be withdrawn.  D. 66 Resp. ¶¶ 114-119.  At the time he reviewed Bryan's grievance file, Colello also spoke with Mowery, a former USAPA representative who had been the Grievance Committee chair at the time Bryan's grievance was filed.  D. 66 Resp. ¶ 130.  Additionally, on November 3, 2015, Ciabattoni emailed Kennedy at APA a chart titled "OLD USAPA WITHDRAWN GRIEVANCES TABLE" that included Bryan's grievance as one that USAPA had planned to withdraw, indicating that USAPA had previously considered Bryan's grievance and determined that it should not be scheduled for arbitration.  D. 66 Resp. ¶¶ 107-109.

In engaging former USAPA representatives who had familiarity with US Airways' policies and procedures, the APA conducted more than just a "minimal investigation" of Bryan's claim. See Emmanuel v. Int'l Brotherhood of Teamsters, Local Union No. 25, 426 F.3d 416, 420  (1st Cir. 2005) (stating that "[t]he duty of fair representation mandates that a union conduct at least a 'minimal investigation' into an employee's grievance," but clarifying that "under this standard, only an 'egregious disregard for union members' rights constitutes a breach of the union's duty'

to investigate") (quoting <u>Garcia v. Zenith Elecs. Corp.</u>, 58 F.3d 1171, 1176 (7th Cir. 1995); <u>Castelli v. Douglas Aircraft Co.</u>, 752 F.2d 1480, 1483 (9th Cir. 1985)).  On this record, the actions by the APA did not reflect an egregious disregard for Bryan's rights.  Considering the factual and legal landscape, APA's process for review and resolution of the inherited grievances was not outside the "range of reasonableness," but considered the opinion of subject-matter experts and relied upon past determinations by USAPA representatives.

Further, there is no indication that APA acted in bad faith in withdrawing Bryan's claim.  Bryan argues that APA acted in bad faith by misleading him into thinking that his case was open only for it to be withdrawn as part of the Global Settlement Agreement.  <u>See</u> D. 65 at 20-21.  "A union acts in bad faith when it acts with an improper intent, purpose, or motive, and [b]ad faith encompasses fraud, dishonesty, and other intentionally misleading conduct."  <u>Good Samaritan Med. Ctr. v. NLRB</u>, 858 F.3d 617, 630 (1st Cir 2017) (internal quotation marks omitted).  There is no indication that APA acted with an improper motive or that it engaged in fraud or dishonesty or intentionally mislead Bryan.  Rather, prior to the finalization of the Global Settlement Agreement, Kennedy informed Bryan that his grievance would be withdrawn and that he could contact DiOrio if he had questions.  D. 66 Resp. ¶¶ 186-188.  Bryan did not attempt to contact DiOrio or any other APA representative after Kennedy informed him of the pending global settlement.  D. 66 Resp. ¶ 190.  Based on the undisputed facts, APA did not breach their duty of fair representation with regard to their withdrawal of Bryan's grievance as part of the global settlement of outstanding USAPA claims with American Airlines.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS APA's motion for summary judgment, D. 60.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge